(31 Misc. Rep. 112.)

BREHM v. GUSHAL.

(Supreme Court, Special Term, New York County.   April, 1900.)

DEED—SETTING ASIDE—FRAUD.
Where, in an action to set aside a deed on the ground of fraud, plaintiff's testimony is confused as to what fraud is claimed, and the evidence on the whole shows that defendant's object was not to defraud plaintiff, but by obtaining a deed from her avoid the expense of a foreclosure of a second mortgage, which was held by his sister, and of a receivership, which would have been necessary, and that, furthermore, plaintiff was not pecuniarily injured, but received all the property was worth, no relief will be granted.

Action by Pauline Brehm against Leopold Gushal to set aside a deed.   Judgment for defendant.

George W. Wise, for plaintiff.
C. P. Northrop, for defendant.

ANDREWS, J.   This action is brought to obtain a judgment setting aside a deed of real estate located in this city, given by the plaintiff to the defendant, upon the ground that such deed was fraudulently obtained by the defendant from the plaintiff.   I have not been furnished with a copy of the stenographer's minutes, and therefore have been obliged to rely upon my recollection as to the testimony given upon the trial.   The plaintiff testified in such a low voice, and in such imperfect English, that it was extremely difficult for me to understand what she said.   So far as I could make out, however, she testified in substance as follows:   That she was the owner of the premises No. 229 West Sixty-Third street, and the

deed in question was executed and delivered on the 9th day of March, 1899. The property was heavily incumbered, there being a first mortgage of $14,000, with interest for a period of several months; a second mortgage for $4,000, with interest, taxes, and water rates; a third mortgage covering the house in question and the adjoining house for $4,706; and a judgment of $664.43 in favor of Mathilda Wolf. The plaintiff had been informed that $2,000 must be paid on account of the $14,000 mortgage, and she supposed the deed was given in order to bring about the payment of that sum. But I could not make out from her testimony in just what manner she supposed the $2,000 was to be paid, though I believe that what she intended to say was that after the defendant had received the deed he was in some way to pay the $2,000 or cause it to be paid. Soon after she gave the deed she demanded its return, and the defendant, whose sister held the second mortgage of $4,000, re-- fused to return the deed unless the amount due on the second mortgage should be paid. The plaintiff gave a very confused account as to her interviews with the defendant and with other persons, and her unsuccessful efforts to raise the $2,000 in question by a sale of the property or by placing a further mortgage upon it. She also testified that the property had cost her $25,000, although it was developed in the course of her testimony that she had obtained the property by an exchange of other property for it, and that this $25,000 was not a cash payment, but was an estimate of the value of the property by the person with whom she made the exchange and by herself. Although the plaintiff was a woman of mature age, of considerable intelligence, and had some apparent knowledge of business matters, her testimony was given in such a way as to make it extremely difficult to understand precisely what fraud she in: tended to claim had been perpetrated by the defendant which induced her to give him the deed. The defendant testified that the plaintiff came to him at different times, and discussed the incum- brances upon the property, her various troubles in regard to the same, and in regard to the collection of rents, her inability to raise money to pay taxes, and her domestic troubles; that he advised her to try and raise money, and offered to give her any extension of time that she desired; that thereafter the attorney who represent- ed the first mortgagee threatened foreclosure, and the defendant informed the plaintiff that it would be detrimental to his interests to allow the foreclosure of the first mortgage, and that if that were attempted he would be obliged to foreclose the second mortgage, and apply for the appointment of a receiver of the rents pending the litigation; that the plaintiff made various further attempts to secure another loan and to raise the money necessary to pay the taxes on the property, and finally, at the suggestion of the defend- ant, offered to execute a deed of the property, and thus avoid the appointment of a receiver in foreclosure; that the defendant, how- ever, advised her to make further efforts, and that she went away, but returned in the afternoon of the same day, and said she could do nothing, and that she would execute the deed; that the deed was thereafter prepared in the defendant's office, and that the plaintiff.

accompanied the defendant to a bank, and executed the deed before a notary; that after the execution of the deed the plaintiff said to the defendant, "Now, I am free to go for my husband; he must support me and my son until he is 21;" that on the next day the plaintiff, by appointment with the defendant, went to the premises in question, and formally surrendered possession, and directed Mrs. Mason, the janitress, to introduce the agent of the defendant, one Tutentag, to the tenants, and direct them to pay the rent to the defendant's agent. Testimony on behalf of the defendant was also given by one Gainesburg, who was on the bond secured by the $4,000 mortgage, and he stated that he was apprehensive that there might be a deficiency for which he would be liable, and that he advised the plaintiff to go to the defendant and give him a deed of the property, as she could not sell the property for enough to cover the lien. It also appeared from the testimony that after this action was brought the $4,000 second mortgage, owned by Babette Cohen, the sister of the defendant, was foreclosed; that the property was sold subject to the first mortgage of $14,000; and that, after the payment of the costs, taxes, and expenses, there was a deficiency of $1,382.41, for which judgment was entered against Gainesburg, but not against the plaintiff. The plaintiff is a woman no longer young, and poor, and certainly has my sympathy, but I cannot find from the facts proved that she has made out a case which entitles her to any relief in this action. So far as I can make out from the testimony, the object of the defendant was not to cheat and defraud the plaintiff, but by obtaining a deed from her avoid the expense of a foreclosure of the second mortgage, which was held by his sister, and of a receivership. He represented his sister, who held the second mortgage, and was apprehensive, as was also the witness Gainesburg, who was liable on the bond, that there would be a deficiency if the second mortgage was foreclosed. He had a right, therefore, to endeavor to avoid the expense of the foreclosure and receivership, if he could do so by obtaining a deed from the plaintiff without injuring her. The plaintiff claims that the defendant told her that if she gave him the deed he would raise the money to pay the $2,000 on the first mortgage. But this was positively denied by the defendant, and it does not seem probable, under the circumstances, that he would ever have placed himself in the position of making any such promise. The plaintiff had considerable experience in business matters, and no doubt knew that she was executing a deed, and she showed, furthermore, that she understood what she had done when she went to the property, the next day, and directed the tenants to pay the rent to the defendant's agent. She might, perhaps, have supposed that, if she gave the deed, the foreclosure of either mortgage would in some way have been prevented; but I cannot find from the evidence that this belief was reasonably based upon anything which the defendant said to her. Furthermore, I am of the opinion that the plaintiff was not injured, pecuniarily, by giving the deed. The experts called as witnesses, as usual, differed in regard to the value of the property. A Mr. Rusher, called by the defendant, testified that the property was of

the value of between $16,000 and $17,000, but not to exceed $17,000. Samuel F. Jayne, an experienced appraiser, testified that the premises were worth between $17,000 and $18,000, and not to exceed $18,000. A witness called on behalf of the plaintiff testified that the value of the lot and the cost of producing a similar house at the present time would be $25,000. But in view of his admissions as to the cost of building materials and labor at the present time, as compared with the cost at the time that the building was erected, and as to the depreciation of the property from year to year, I do not think his testimony would warrant a finding that the value of the property at the present time would be $25,000. The best test, however, of the value of property appears to me to have been what it brought when sold under the decree and foreclosure. The charges against the property at that time amounted to $19,382.41, and the amount bid was $4,000, adding to which the amount of the first mortgage, making $18,000, left a deficiency of $1,382.41. There is no evidence that the sale was unfairly conducted, or made in such a manner as not to produce the market value; and if, as the plaintiff claims, the property had been worth $25,000, I cannot understand why it did not bring a higher price. Upon all the testimony I cannot find that the plaintiff has established by a preponderance of evidence either that she was induced to deliver the deed by any fraud of the defendant, or that she was actually injured by giving the deed. The complaint will therefore be dismissed, but without costs.

Complaint dismissed, without costs.